Emma Seitzinger

*v.*

The Modern Woodmen of America.

*Opinion filed October 26, 1903.*

Insurance—*effect of restriction on liability in case of suicide, sane or insane.* A clause in a life policy providing against liability if the insured "shall die by his own hand, whether sane or insane," is a complete exemption from liability in the case of suicide by the insured, notwithstanding he was wholly insane and totally incapable of understanding the physical nature and effect of his act.

· *Seitzinger* v. *Modern Woodmen of America,* 106 Ill. App. 449, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of White county; the Hon. P. A. Pearce, Judge, presiding.

· This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of White county.

Appellant filed her declaration in assumpsit against appellee, the Modern Woodmen of America, on a certificate of membership in that order, dated January 19, 1901, and issued to Eli B. Seitzinger, her husband, for the benefit of herself and children. The declaration is in the usual form, setting up the certificate *in hæc verba,* and averring that the insured departed this life on the 11th day of November, 1901. To the declaration appellee filed two special pleas. The first special plea avers that in and by the application for membership, and by the benefit certificate issued to the insured, "it was stipulated and agreed by and between the said Eli B. Seitzinger and the said Modern Woodmen of America, that the said society or order did not indemnify against death from suicide, whether sane or insane, and if the said Eli B. Seitzinger should, within three years after becoming a beneficial member of said society, die by his own hand, whether sane or insane, said certificate should become

null and void and of no effect," and that said Eli B. Seitzinger did, within three years after becoming a beneficial member, commit suicide and die by his own hand. The second special plea avers that the insured was subject to all the by-laws, rules and regulations of the order, and that at the time he became a member, and at the time of his death, there was in full force a by-law of the order as follows: "If any member holding a benefit certificate heretofore or hereafter issued by this society shall, within three years after becoming a beneficial member of this society, die by his own hand, whether sane or insane, his benefit certificate shall become null and void by reason of such act, and the payments thereon shall be absolutely forfeited," and that the insured did die by his own hand within three years after becoming a beneficial member. Appellant replied that Seitzinger, at the time of his death, "was wholly insane, totally unconscious of the manner of his death, and wholly and totally incapable, by reason of such insanity, of forming an intention of taking his own life, and did not, at the time, comprehend or understand the physical nature and result of his act and did not intend to take his life, and that the death was not the result of any intentional act of his." Appellee demurred to the replication, and the circuit and Appellate Courts have sustained the demurrer, and to reverse that ruling appellant prosecutes this appeal.

N. C. BAINUM, and C. S. CONGER, for appellant:

When a policy contains the language that if the assured shall commit suicide or shall die by his own hand it shall be void, it is only necessary, to warrant a recovery, to show that the assured was so far insane at the time of his death that he was not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, although he might comprehend and realize the physical nature and results of his acts. *Life Ins. Co.* v. *Terry*, 15 Wall. 580; *Life Ins. Co.* v. *Rodel*, 5 Otto, 232.

Where, however, a policy provides that it is to become void if the assured shall commit suicide or die by his own hand, sane or insane, and the representatives of the assured go farther than merely to aver that the assured was insane to the degree that he did not know the moral character, the general nature, consequences and effect of the act he is about to commit, by averring that the insured, in taking his own life, was at the time so insane that he was totally unconscious of the manner of his death, and entirely incapable, by reason of such insanity, of forming an intention of taking his life, and did not, at the time, comprehend or understand the physical nature and consequences of his act, and that the death of the assured was not the result of any intentional act of the assured, the policy is not avoided, but remains in full force. *Life Ins. Co.* v. *Rodel,* 5 Otto, 232; 1 Medical Juris. of Insanity, 408; *Life Ins. Co.* v. *Daviess,* 87 Ky. 541; *Grand Lodge* v. *Wieting,* 168 Ill. 419; *Nelson* v. *Life Ass.* 73 Ill. App. 133; *Life Ins. Co.* v. *Broughton,* 109 U. S. 121; *Fidelity Co.* v. *Weise,* 182 Ill. 498; 19 Am. & Eng. Ency. of Law, 76.

The language of a policy of life insurance, particularly in determining whether the liability is limited, is always to be strictly construed against the insurer. *Queen Ins. Co.* v. *Dearborn Savings Ass.* 175 Ill. 115; *Niagara Ins. Co.* v. *Heenan & Co.* 181 id. 575.

J. W. WHITE, and ROSS GRAHAM, for appellee:

Where the contract of a fraternal beneficiary society provides that if the member shall come to his death by his own hand, sane or insane, there shall be no liability, the death of the member by his own hand while wholly insane and incapable of forming an intention by reason of such insanity is within the exceptions of the contract and the society is not liable, the death not being accidental. *Chapman* v. *Life Ins. Co.* 6 Biss. 238; *Spruill* v. *Life Ins. Co.* 120 N. C. 141; *Scarth* v. *Life Society,* 75 Iowa, 346; *Tritschler* v. *Keystone Ass.* 180 Pa. St. 205; *Billings* v. *Insur-*

*ance Co.* 64 Vt. 506; *Riley* v. *Life Ins. Co.* 25 Fed. Rep. 315; *DeGoggorza* v. *Life Ins. Co.* 65 N. Y. 232; *Supreme Lodge* v. *Clark*, 88 Ill. App. 600; *Keefer* v. *Modern Woodmen*, 52 Atl. Rep. 164; *Clark* v. *Life Assurance Society*, 118 Fed. Rep. 374.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The question is here presented whether any degree of insanity whatever will justify a recovery upon a contract of life insurance which contains a clause exempting the insurer from liability in case the insured "*shall die by his own hand, whether sane or insane.*" The pleadings in this case admit that the insured, Eli B. Seitzinger, took his own life, and that at the time he did so he was wholly insane, totally unconscious of the manner of his death, and by reason of his total insanity was incapable of forming an intention of taking his life and did not comprehend the physical nature and results of his act.

It is contended by appellant that the insurer cannot escape liability under this contract when such a condition of insanity exists as is admitted in this case. In support of her contention she cites the cases of *Grand Lodge I. O. M. A.* v. *Wieting*, 168 Ill. 408, *Charter Oak Life Ins. Co.* v. *Rodel*, 5 Otto, 232, *Manhattan Life Ins. Co.* v. *Broughton*, 109 U. S. 121, and other like cases. These cases rest mainly upon the decision of the Supreme Court of the United States in the case of *Mutual Life Ins. Co.* v. *Terry*, 15 Wall. 580,—a suit on a policy in which the condition was that if the insured shall "die by his own hand" the policy should be void, and in which that court said: "We hold the rule on the question before us to be this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy or a desire to escape from the ills of life intentionally takes his own life, the proviso attaches and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of the act, but when his reasoning faculties

are so far impaired that he is not able to understand the moral character, the general nature, consequences and effects of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties, and the insurer is liable."

Conceding that to be the rule in the class of cases cited by appellant, we think the case at bar is clearly distinguishable from each of them, in none of which does the "sane or insane" clause appear in the contracts of insurance. In the case of *Bigelow* v. *Berkshire Life Ins. Co.* 93 U. S. 284, which is quoted from by the appellant but not cited in her brief, wherein the policy contained a provision for a different settlement in case the insured "should die by suicide, sane or insane," the court held that the pleadings did not aver such a case of insanity as that the insured did not comprehend the physical nature and consequences of his act. In discussing the "sane or insane" clause in that policy the court said: "It is unnecessary to discuss the various phases of insanity in order to see whether a possible state of circumstances might not arise which would defeat the condition. It will be time to decide that question when such a case is presented. For the purposes of this suit it is enough to say that the policy was rendered void if the insured was conscious of the physical nature of his act."

We have not been able to find a case in the Supreme Court of the United States in which the possible state of circumstances referred to in the foregoing case has directly arisen. Policies containing similar provisions to that of the one here sued on,—that is, containing the sane or insane clause,—were before that court in *Traveler's Ins. Co.* v. *McConkey,* 127 U. S. 661, but the validity or proper construction of such a provision was not decided. It was, however, said in the opinion of the court: "If he [the insured] committed suicide then the law was for the company, because the policy, by its terms, did not extend

to or cover self-destruction, whether the insured was at the time sane or insane." And again, in *Home Benefit Ass. v. Sargent*, 142 U. S. 691, the policy containing a provision that the insurer should not be liable if the insured died "by his own hand or act, whether voluntary or involuntary, sane or insane," the decision turned mainly on the competency of testimony, and the liability of the defendant upon the contract was not discussed or decided. In the still later case of *Connecticut Mutual Life Ins. Co. of Hartford v. Akins*, 150 U. S. 475, the condition was, "suicide, the self-destruction of the assured in any form, except upon proof that the same is the direct result of disease or of accident occurring without the voluntary act of the assured." The company was held liable, notwithstanding the self-destruction of the insured, on the doctrine announced in *Mutual Life Ins. Co. v. Terry*, 15 Wall. 580, the court saying in its opinion: "The clause contains no such significance or decisive words as 'died by suicide, sane or insane,' as in *Bigelow v. Insurance Co.* 93 U. S. 284, or 'by suicide, feloniously or otherwise, sane or insane,' as in *Insurance Co. v. McConkey*, 127 U. S. 661."

Nor has the question raised by the issues in this case ever been passed upon by this court. In the late case of *Supreme Lodge Order of Mutual Protection v. Gelbke*, 198 Ill. 365, the contract of insurance sued upon contained the condition that if the death of the insured should be caused by or result directly or indirectly by his own suicidal act, sane or insane, neither he nor any of his beneficiaries should be entitled to participate in the widows' and orphans' protection fund. But the defendant company treated the contract as simply providing against liability in case the insured should commit suicide, and asked the trial court to instruct the jury that although the insured, at the time of his death, was insane, yet that if he was capable of forming an intention, and if he did intentionally commit suicide, the plaintiff could not collect more than the amount of the assessment, with four per cent

interest thereon, (which was provided for in the policy,) but the court changed that instruction so as to make it read, that if the insured was, at the time of his death, insane, but the jury believed, from the evidence, that, irrespective of such insanity, he, at the time of his death, "was capable of forming a rational intent, and that he did with rational intent commit suicide, then the plaintiff in this case cannot recover any greater sum than the amount of assessments paid, * * * with four per cent interest thereon." The modification of the instruction was held to be error and the judgment of the court below reversed, and we said (p. 370): "The changes in the instruction required the formation of a rational intent, abrogating the agreement of the parties that the act should exempt the defendant although he might be insane. A rational intent is one founded on reason, as a faculty of the mind, and opposed to an irrational purpose." It was not decided in that case that under the contract of insurance there declared upon the insurer might not insist upon its non-liability upon proof that the insured came to his death by suicide, even though the degree of insanity was such that he was "wholly insane, totally unconscious of the manner of his death, and wholly and totally incapable, by reason of such insanity, of forming an intention of taking his own life, and did not at the time comprehend or understand the physical nature and result of his act and did not intend to take his life," as was attempted to be urged by the plaintiff in this case under the replication.

The Appellate Courts for the Second, Third and Fourth Districts have in well considered opinions held such provisions as the one under discussion valid, and as constituting a complete defense to an action upon the policy where the insured died by suicide, his own hand or self-destruction, though insane, without reference to the degree of his insanity. (*Supreme Tent Knights of Maccabees* v. *Hammers,* 81 Ill. App. 560; *Supreme Lodge Knights*

of *Pythias* v. *Clarke*, 88 id. 600; *Supreme Court of Honor* v. *Peacock*, 91 id. 632; *Northwestern Mutual Ins. Co.* v. *Churchill*, 105 id. 159.)  The case of *Supreme Lodge Knights of Pythias* v. *Clarke*, *supra*, was brought by appeal to this court, and the judgment of the Appellate Court was reversed, without discussion as to the merits, because that court had failed to remand the case.  *Clarke* v. *Supreme Lodge Knights of Pythias*, 189 Ill. 639.

There seems to be a general concensus of opinion in the several courts of last resort in this country in which the question has arisen, that where a policy contains the condition that if the insured dies by his own hand, commits suicide, self-destruction, etc., "whether sane or insane," and he does die by his own act, the insurer is not liable; that "the word 'insane' implies every degree of unsoundness of mind, and the liability of the insurer is not affected by the degree of insanity."  The case of *De-Gogorza* v. *Insurance Co.* 65 N. Y. 235, is generally cited as the leading case on the subject.  Speaking of the condition "sane or insane," it is there said: "We have therefore only to consider the interpretation to be given to the language of the contract of insurance, for no question is made but that it was fully understood and agreed to by both parties.  It can scarcely be doubted that an insurer of the life of a person may, by apt language, guard himself from liability for all disasters if the exemption does not contravene public policy.  He may provide that if the assured shall die of the small-pox, or any other specified disease of the body, he would not be liable, and there appears to be no reason why he may not guard himself against liability if death results from any disease of the mind.  Indeed, it is said by Lapallo, J., in *VanZant* v. *Insurance Co.* 55 N. Y. 160, 'that no rational doubt can be entertained that a condition exempting the insurer from liability in case of the death of the assured by his own hand, whether sane or insane, would be valid if mutually agreed upon between the insurer and the in-

sured;' and then, in substance, adds, that if nothing is said with respect to insanity, the result is that a party does not 'die by his own hand' if his death happens from the involuntary act of a madman. This view of the question is but a very concise and accurate statement of the law as announced in cases previously adjudged. * . * * The word 'insane' or 'insanity' ordinarily implied every degree of the unsoundness of mind; and in this case we assume that the assured was in the very last degree mad or insane, so that the mere act of self-destruction was wholly involuntary. * * * We prefer to base our decision upon the ground that the words of the proviso in the policy before us, by plain rules of interpretation, exempt the insurer from liability." To the same effect are *Spruill* v. *Northwestern Mutual Life Ins. Co.* 120 N. C. 141, citing numerous cases; *Scarth* v. *Security Mutual Life Society*, 75 Iowa, 346; *Tritschler* v. *Keystone Mutual Benefit Ass.* 180 Pa. St. 205; *Sargent* v. *Mutual Life Ins. Co.* 189 id. 341; *Keefer* v. *Modern Woodmen of America*, 52 Atl. Rep. 164.. Other cases are to the same effect, and we have found none to the contrary.

In the recent case of *Clarke* v. *Equitable Life Assurance Society*, 118 Fed. Rep. 374, the Circuit Court of Appeals for the Fourth District construed the condition, and held that in that case the provision "self-destruction, sane or insane," was a risk not assumed by the society in the contract. In that case the evidence showed the insured shot himself in the head with a pistol. Plaintiffs, in their replication admitting the shooting, averred that the mind of the assured "was so impaired and affected by insanity that he was not conscious of the physical nature and consequences of the act he then committed and did not intend to cause his death, but was moved to commit said act by irresistible impulse." The lower court sustained a demurrer to the replication and the circuit court of appeals affirmed the judgment. In its opinion by Brawley, district judge, the following cogent reasoning is used:

"If it was an open question, there is much to be said of the injustice of contracts of this nature, for a person ought no more to be held responsible for the loss of his life when taken by himself under the ravings of delirium or impelled by the hallucinations of melancholy than if he dies from ordinary disease or from an accident. But that question is not before us, and it seems to be well settled that insurance companies may avoid altogether this class of risks, and that, being at liberty to stipulate against hazardous occupations, unhealthy climates or deaths from consumption or other excepted diseases, they may also contract not to assume a risk of a certain mode of death, and presumably the premiums are calculated on the elimination of that risk. If the assured is informed, in apt words, of the extent of the limitation, it is not perceived that there is any good reason why such contract should not be governed by the same rules of interpretation as control courts in all other cases of contract, and why plain and unambiguous words should be frittered away by casuistry and refinement." The opinion then takes up a discussion of the cases of *Mutual Life Ins. Co.* v. *Terry, supra, Bigelow* v. *Berkshire Life Ins. Co. supra,* and other similar cases, and continues: "It will be observed that the proviso under consideration contains no words limiting its operation to intentional suicide. The company contracted that it would not assume the risk of self-destruction, sane or insane. The contention of appellant is, that self-destruction avoids the policy if the insured lacked the intelligence to know that his act was wrong, but that it is not avoided if he did not understand the physical nature of his act. To sustain such a contention would require us to believe that the deceased shot himself through the head because he did not know that it would kill him. Instead of giving to the words of the proviso the plain meaning for which they were manifestly intended,—that the insurer intended to guard itself from liability if the insured came

to his death from any physical movement of his own, whether sane or insane,—we would lose ourselves in the consideration of the different phases of insanity, be compelled to split it into degrees, and to hold that if he was so entirely insane as not to understand the physical consequences of his act the proviso would be avoided, while a lesser degree of insanity would make the company liable."

In the case at bar the replication confesses the cause of death and seeks to avoid the condition in the contract by setting up the insanity of the insured. It is not denied that an insurance company may contract to avoid liability if death results from any disease of the mind, just as it may if death results from any specified bodily disease, if the contract is embodied in apt language. Nothing can be clearer than that the words "sane or insane" were introduced in the certificate by the insurer for the purpose of excepting from its operation any self-destruction, whether the insured was of sound mind or in a state of insanity. There is no qualification of the varying degrees of insanity, but the language is, simply, "sane or insane." These words have a precise, definite, well understood meaning. No reasonable mind could be misled by them, and no expansion of language could more clearly express the intention of the parties. In the construction of ordinary words in a contract they are to be given the meaning which they convey to the ordinary mind, and to permit, in cases of this kind, the discussion and proof and a differentiation of the degrees of insanity would be to do violence to words having a generally accepted significance and to do that which the parties themselves never contemplated. By the plain rules of interpretation appellee is exempt from liability under this contract.

This view is in harmony with that of the Appellate Court, expressed in its opinion by CREIGHTON, J., and its judgment will accordingly be affirmed.

*Judgment affirmed.*