### Alexandra Gregoric, Administratrix, Appellee, v. Prudential Insurance Company, Appellant.

1. INSURANCE—*effect of acceptance of policy.* When an applicant for insurance receives and accepts a policy such applicant takes it with all of its provisions and is bound by the terms of the policy without reference to the statements in the application. If such applicant or representative has a right of action this right of action must be based upon the policy and they are bound by the provisions of the policy the same as they would be bound by the provisions of any other lawful contract.

2. INSURANCE—*what limitation of liability valid.* An insurance company may lawfully limit its liability to recovery of the premiums paid if it shall appear that the insured was not in sound health on the date of the policy.

3. VERDICTS—*when set aside as against the evidence.* A verdict will be set aside on review as against the evidence where in the

opinion of the Appellate Court it is clearly and manifestly against the weight thereof.

Action commenced before justice of the peace. Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the March term, 1911. Reversed and remanded. Opinion filed November 11, 1911.

KRAMER, KRAMER & CAMPBELL and C. H. G. HEIN-FELDER, for appellant; FORDYCE, HOLLIDAY & WHITE, of counsel.

G. C. BORDERS, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This was an action commenced by appellant before a justice of the peace, appealed to the City Court of East St. Louis, and trial was there had before a jury, resulting in a verdict for the plaintiff in the amount of one hundred seventy-five dollars, upon which verdict, a judgment was rendered and an appeal taken to this court.

This suit was instituted upon an insurance policy issued by the appellant insuring the life of Marjanna Wienckienwicz and bearing date of January 17, 1910. The application for the insurance bears date of January 10, 1910. Marjanna Wienckienwicz died intestate on February 10, 1910, of heart trouble. The policy issued to the deceased was for $350 and provided: "If an insured shall die within six months from the date hereof one-half the above benefit will be paid; after six months from which date the policy will be in force for the full benefit." And the policy further provided: "1st. Preliminary Provision: The Company's liability under this policy shall be limited to a return of the premiums paid hereon if the insured die before the date hereof or if on said date the insured be not in sound health."

The defense of the appellant in this case was, first,

that, at the time the policy was issued and delivered to the deceased Marjanna Wienckienwicz, she was not in sound health and that the liability of the company was limited to a return of the premiums paid thereon; second, that the deceased was at the time of the making of her application afflicted with heart disease; that she falsely represented that she was not so troubled, and that such representation was a material one and avoided the policy.

In the view we take of this case, we deem it necessary to discuss the former proposition only, as we think a determination of this question is decisive of the case. It is the settled law of this state that an insurance company may limit its liability upon an insurance policy as long as such limitation is not against public policy. In discussing the liability of insurance companies where the question of suicide by persons sane or insane was involved, our Supreme Court has said: ''It can scarcely be doubted that an insurer of the life of a person may, by apt language, guard himself from liability for all disasters if the exemption does not contravene public policy. He may provide that if the assured shall die of the small-pox, or any other specified disease of the body, he would not be liable, and there appears to be no reason why he may not guard himself against liability if death results from any disease of the mind.'' Seitzinger v. Modern Woodmen, 204 Ill. 58. And again, on page 67 of the same case, the court says: ''It seems to be well settled that insurance companies may avoid altogether this class of risks, and that, being at liberty to stipulate against hazardous occupations, unhealthy climates or deaths from consumption or other excepted diseases, they may also contract not to assume a risk of a certain mode of death, and presumably the premiums are calculated on the elimination of that risk. If the assured is informed, in apt words, of the extent of the limitation, it is not perceived that there is any good

reason why such contract should not be governed by the same rules of interpretation as control courts in all other cases of contract, and why plain and unambiguous words should be frittered away by causistry and refinement.'' And in the same case, the court after discussing the many cases referred to upon the liability of insurance companies, where death by suicide was the result of a sane or insane person, concluded this branch of the subject by saying: ''We prefer to base our decision upon the ground that the words of the proviso in the policy before us, by plain rules of interpretation exempt the insurer from liability.''

The Appellate Court, in the case of Prudential Insurance Company of America v. Fredericks, 41 Ill. App. 419, says: ''And by accepting the policy and paying premiums upon it, whether that was done by the assured or by one acting for him, whether by his authority or as a volunteer, the assured and his administratrix, now representing him, have adopted the policy as it reads, with the same effect as if he had intelligently answered each question and signed his name to the application. He and his representative must adopt the whole or none of the complete transaction. It is only by adopting the policy that the appellee has any standing, and such adoption necessarily embraces all the terms of the policy.'' The Appellate Court in support of this doctrine refers to many authorities which it is unnecessary for us to discuss here. We are satisfied that when Marjanna Wienckienwicz received and accepted the policy in question that she took it with all of its provisions and is bound by the terms of the policy without reference to the statements in the application. If she, or her administratrix has a right of action for her death, this right must be based upon the policy, and they would be bound by the provisions of this policy the same as they would by the provisions of any other lawful con-

tract. This seems to be the plain settled law of this state.

The question then arises upon the construction of the contract or policy offered in evidence. The provision of it is that if on the date of the policy the insured was not in sound health then she would be limited to a recovery of the premiums paid. It seems to us that this language is clear and unambiguous and that any person, in reading this policy, could not be misled as to its terms or provisions, and we think this provision was in force and that the case should have been tried upon the theory that the provision was in force, and that the court erred in not giving the second and fifth refused instructions offered by the appellant. The second instruction so refused is:

"The court instructs the jury that the deceased was bound, and her administrator, the plaintiff in this case, is bound by the conditions, privileges and provisions in the life insurance policy sued on, whether the deceased knew them or not. The deceased is in law presumed to know all of such conditions, privileges and provisions."

The fifth instruction offered on behalf of appellant and refused is as follows:

"The court instructs the jury that if you believe from a preponderance of the evidence that the deceased at the time she took out the policy in question was suffering from an incurable ailment and that she was not in sound health at said time, then the defendant's liability cannot under the terms of the policy exceed the amount of the premium paid by the deceased, or for the deceased for the policy sued on."

We think that it was reversible error in the court to refuse these instructions under the evidence in the case.

We come now to the discussion of the facts in this case for the purpose of determining whether or not the verdict of the jury can be sustained upon the facts. It will be borne in mind that the application in this case was made on January 10, 1910; the policy issued

January 17th and the deceased died on February 10th of heart trouble. The testimony of Doctor Mesirow who says that he is a practicing physician and surgeon, and that the deceased Marjanna Wienckienwicz came to his office on April 25, 1909, and at that time she had heart trouble and nephritis, kidney trouble, and was incurably sick, and that he told her so, and that he told her what her trouble was, her condition, and that it was incurable and that the deceased was liable to be taken off suddenly; that he treated her for a while and was called in on December 23rd and she had an acute attack and she knew then that it was her heart that was troubling her; that just prior to her death she had an acute attack when he was called in. "It was then a matter of but a few hours with her; the attack possibly started an hour or two before I was called in; it was an acute attack of the heart from which she died." Joseph Gregoric, a cousin of the plaintiff by marriage, says that he knew Marjanna Wienckienwicz and that she lived at her sister's house about three or four months, and he remembers when she took out the policy of insurance and at that time she was working around the house; that she had not been working at any other place since she moved to her sister's house; and on cross-examination he says that he had known the deceased for about five years and that she had been sick several times since he knew her, but he didn't know whether it was heart trouble or not, and that she was sick not very long before she took out the policy; that he saw her several times when she was sick. Her sister Alexandra Gregoric testified: "She used to work in a tobacco factory; she worked there all summer; she quit there just before Christmas and around about that time she used to help me wash the dishes and wash clothes around the house that way. She was not sick while she was staying with me only at the time she died." This is substantially all the evidence upon the

question as to her sickness. And while it is true that the plaintiff says her sister was not sick only at the time she died, she might not have regarded her as being sick as she was able to be around but the testimony of her cousin who was a witness for the plaintiff, and of Doctor Mesirow who was her physician, who appears fair in his testimony, both say that she was sick several times, and the doctor treated her at the house of plaintiff in December, 1909, and it is unreasonable to believe the sister did not know of her sickness. These two witnesses are disinterested and we are satisfied that they told the truth about the sickness of the deceased; that the deceased had from at least in April, 1909, been seriously afflicted with heart trouble; that her affliction was serious and dangerous and she was liable to die at any time from such affliction, and that she knew it, and we believe the verdict of the jury was manifestly against the weight of the evidence, and that the court erred in overruling appellant's motion for a new trial.

*Reversed and remanded.*