## Isabel Waller Knott, Appellee, v. Globe Indemnity Company, Appellant.

### Gen. No. 30,642.

1. INSURANCE—*construction of accident policy provision exempting from coverage loss due to acts, etc., which if done by sane person would be deemed intentional.* A special provision of an accident insurance policy exempting from coverage a "loss due to any means, act, injury or disease which, if used, done or self-inflicted by the assured while in the possession of all mental faculties, would be deemed intentional," precludes recovery where the death of an assured is due to his act in leaping from the window of an office building, regardless of his sanity at the time of so doing, or of the presence or absence of an intent on his part to injure or kill himself.

2. INSURANCE—*sufficiency of evidence to support recovery under policy insuring against death by accidental means.* Where in an action upon a policy insuring against death by accidental means it appeared without contradiction that the death of the assured resulted from his act in leaping from the window of an office building, and the policy expressly exempted from coverage a "loss due to any means, act, injury or disease which, if used, done or self-inflicted by the assured while in the possession of all mental faculties, would be deemed intentional," proof that the assured was insane at the time he made such leap was immaterial and did not warrant a judgment against the defendant.

Appeal by defendant from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Reversed. Opinion filed October 5, 1926.

CASSELS, POTTER & BENTLEY, for appellant; RALPH F. POTTER, of counsel.

HICKS & FOLONIE, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment against defendant for $15,000 in a suit upon a policy of accident insurance issued by defendant to one J. Waller Knott, brought by his mother as the beneficiary named therein.

The policy provided for payment of said sum to the beneficiary in the event that the insured during the term of the policy should lose his life "directly and exclusively by bodily injury sustained through accidental means." It also provided in "Special Provision A" of the policy that it does not cover "loss due to any means, act, injury or disease which, if used, done or self-inflicted by the assured while in the possession of all mental faculties, would be deemed intentional."

Plaintiff's statement of claim alleged that the assured came to his death by reason of bodily injury sustained solely through the accidental means of a "fall" or "jump" of the assured from a window in an office building known as 25 West Washington Street in the City of Chicago, while he was not in possession of his mental faculties, and that his said death was unintentional "being due to means, act or disease occurring to the said insured while not in the possession of all mental faculties."

Defendant's affidavit of merits admitted that the assured came to his death by reason of a "fall" or "jump," but denied that the assured was not in pos-

session of all his mental faculties at the time, and denied that at the time thereof the assured was insane and that "said death was unintentional or was done by means, act or disease occurring to the said assured while not in the possession of all mental faculties." The pleading also set up "Special Provision A," as aforesaid, and averred that the death of the assured was due to the act of "jumping" from the window, which, if done by the said J. Waller Knott "while in the possession of all mental faculties, would be deemed intentional."

Defendant also pleaded want of liability on other grounds which we deem it unnecessary to consider.

It was clearly plaintiff's theory of the case that the insured was insane at the time of the act which resulted in his death, and that, whether his death came from a "fall" or "jump" it was unintentional and accidental in the eye of the law, and that the provision in question could not be interpreted to exempt defendant from liability under such theory.

It was the theory of the defense that the question of intent is not to be determined from the condition of mind of the assured,—whether he was in possession of all his faculties—but from the character or nature of the act resulting in death judged from the viewpoint of having been done by one while in the possession of all mental faculties; and, if upon such a view, the act imports an intention to commit it, then it would be deemed intentional under said "Special Provision A" and not accidental, whether done by one sane or insane. Hence, the main argument before this court is addressed to the construction of said provision.

Our attention is directed to many cases interpreting similar provisions, and so-called "suicide clauses," intended to exclude "self-destruction" and injury by "self-inflicted" acts from coverage of policies for accident insurance. Many of these cases are collected and discussed in a note in 17 L. R. A. (N. S.) pp. 261-

270, to the case of *Cady v. Fidelity & Casualty Co. of New York*, 134 Wis. 322, there reported and which is relied on by plaintiff in support of the theory that the burden was cast on defendant to prove that the assured was at the time, "conscious of the physical consequences of the act" and therefore intended it.

It appears that in consequence of the varying judicial interpretations of so-called "suicide clauses" designed to exempt the insurer from liability, the insurance companies have adopted language like or similar to that of "Special Provision A," eliminating the word "suicide" or the words "suicide, sane or insane," with the view of employing language that would be universally recognized as free from ambiguity or doubt. In the interpretation of such clauses the courts have indulged in much refined distinction which seems to belong, as said in *Spruill v. North Western Mut. Life Ins. Co.*, 120 N. C. 141, to the domain of speculative psychology rather than to the practical administration of the law. In interpreting suicide or self-destruction clauses in some of these cases distinctions have been drawn with reference to whether the insured was conscious of the physical nature and consequences of his act or lacked an intention to cause his death, or was driven by an irresistible insane impulse, or, whether they contemplated and included a felonious suicide, or a suicide committed by one conscious of the physical nature and consequences of his act. In other cases these distinctions have been ignored. But, in our opinion, the meaning of "Special Provision A" is so clear as to obviate the necessity of discussing them. Whatever ambiguity may exist in other forms of so-called suicide or self-destruction clauses, in determining the fundamental question whether the act or injury upon which liability is predicated in the instant case is accidental or unintentional, there is in our opinion no room for two constructions of the provision in ques-

tion. Its manifest meaning is that when the act of the insured resulting in his injury or death would be deemed intentional if done by a sane person, loss therefrom is not covered by the policy. By such language the test is not the capacity of the assured to form an intention to commit the act, or his consciousness of the physical consequences thereof, but the nature or character of the act itself viewed from the standpoint of being done by one in the possession of all his faculties. To state it more concretely, if a sane person had jumped from such a window it would unquestionably be conceded to be intentional. Under a logical construction of said provision, it matters not, therefore, what was the state of mind of the assured at the time if, as a matter of fact, he leaped from the window.

In *Clemens v. Royal Neighbors of America,* 14 N. D. 116, it was urged that the following clause of a certificate issued by the defendant, to wit: "If the member holding this certificate * * * shall die * * * by any means or act which if used or done by such member while in possession of all natural faculties unimpaired would be deemed self-destruction," was ambiguous. The court held that the language conveyed one meaning, and that the idea conveyed was that if the assured should die by his own act, or through means of his own selection, the certificate would be void, whatever his condition of mind at the time. The court said: "It is equivalent to saying that if the assured should die by his own hand, whether sane or insane, the certificate would be void."

It was held in *Seitzinger v. Modern Woodmen of America,* 204 Ill. 58, that the words, "sane or insane" were introduced in the certificate in that case by the insurer for the purpose of excepting from its operation any self-destruction, whether the assured was of sound mind or in a state of insanity, and that it was competent for the insurance companies to contract

for such exemption from liability. In *Zerulla v. Supreme Lodge, etc.*, 223 Ill. 518, it was held that where the insured committed suicide, and where the by-laws of the defendant society provided that "if the death was due to the voluntary or involuntary suicidal act of the deceased member, whether he was at the time sane or insane, no benefit should be paid on account of the death of such member," there could be no recovery under the contract, "whether he was sane or insane,—and this without regard to the degree of sanity, if he was insane at the time." Whatever be the view of the courts in other jurisdictions the courts of this State have denied recovery where such words were used in the exempting clause. A list of cases disclosing like rulings may be found in the note on page 265 of 17 L. R. A. (N. S.). These decisions are pertinent only as the phraseology in "Special Provision A" may be deemed, like that in the *Clemens* case, *supra*, as "equivalent to saying that if the assured should die by his own hand, whether sane or insane." A like construction to a similar provision to that in the latter case was given in *Keefer v. Modern Woodmen of America*, 203 Pa. 129. In *Cotter v. Royal Neighbors of America*, 76 Minn. 518, the court held there was no ambiguity in a like provision, saying that "it was evidently adopted, in view of the decisions of the courts on the subject, so as to exempt the company from liability in case of self-destruction of the insured, whatever might have been her mental condition at the time of the act." In those cases the provision ended with the words "would be deemed self-destruction." Here it ends with the words "would be deemed intentional." Bearing on the question of intent, the phrase used in the case at bar is in fact more explicit.

It is true that in *Andrews v. United States Casualty Co.*, 154 Wis. 82, language very similar to that of "Special Provision A" was deemed ambiguous, and for that reason was resolved on familiar principles

against the insurer. But if, as we hold, there is no ambiguity in "Special Provision A," the policy in question must be construed as precluding recovery in case the assured leaped from said window.

As to the fact whether the insured leaped or fell from the window there is room for only one conclusion from the evidence. Only one witness testified on that subject. From the opposite side of the court he saw the insured raise the lower sash of the window clear up, then turn from it and immediately reappear —within two to four seconds—in what he described as a "jump out of the window," a "head dive" out of it, "a dive over,"—"head first just like a head dive." There was no testimony tending to show a situation in which he could have fallen accidentally from the window, and plaintiff's theory of the accident is based not in the nature of the act, but the state of mind of the assured. The window was 54 inches wide. Its sill was 33 inches from the floor. From the inside of the sill to the outside of the coping was 23 inches. When the lower sash was raised clear up there was an opening 54 inches wide and 36 inches high. There was no evidence tending to show that the insured stood by the opening after raising the sash or leaned out of it. Under such circumstances the conclusion is inevitable that the assured leaped from the window. That being practically an unquestioned fact, to which the court was to apply the provision in question, and there being no other material fact in controversy, under our construction of the provision defendant was entitled, in accordance with its motion, to an instructed verdict.

Plaintiff's case was predicated on the theory that the assured was insane and the case was tried on that theory and no other. There was no proof offered or that tended to rebut plaintiff's evidence of insanity. The crucial fact that the assured leaped from the window being uncontroverted, it was immaterial whether the assured was sane or insane at the time of

the act, for the act being one that would be deemed intentional, whatever the state of mind of the assured, and, therefore, not accidental, no recovery could be had under the terms of the policy.

Accordingly the judgment is reversed. ,

*Reversed.*

GRIDLEY, P. J., and FITCH, J., concur.